IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLND
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, 131 M ST NE WASHINGTON, DC 20002, | ) ) ) ) | CIVIL ACTION NO. 18-2917 |
| Plaintiff, | ) ) | COMPLAINT |
| vs. | ) ) | JURY TRIAL DEMANDED |
| MSDS CONSULTANT SERVICES, LLC, 7431 OLD ALEXANDRIA FERRY RD, STE 217 CLINTON, MD 20735 PRINCE GEORGE'S COUNTY, | ) ) ) ) ) | |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, to correct unlawful employment practices on the basis of disability.  In this action, the United States Equal Employment Opportunity Commission (EEOC or Commission) seeks to provide appropriate relief to Charging Party LaRufus Mitchell, who was employed by Defendant MSDS Consultant Services, LLC (Defendant or MSDS) as a security specialist and project manager/analyst at the United States Department of State (DS).  As alleged with greater particularity below, EEOC alleges that Defendant violated the ADA when it discriminated and retaliated against Charging Party.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42

U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Southern Division.

## PARTIES

3.      Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      At all relevant times, Defendant has continuously been doing business within the jurisdiction of the United States District Court for the District of Maryland, Southern Division.

5.      At all relevant times, Defendant has had at least 15 employees.

6.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

7.      At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8.       More than 30 days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of the ADA.

9.       On April 6, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with

the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.     The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the unlawful practices described in the Letter of Determination.

11.     The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.     On May 31, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13.     All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

14.     MSDS is a privately owned federal contractor headquartered in Clinton, Maryland.

15.     MSDS contracts with the United States Department of State (DS) to provide personnel for various DS worksites, including in the Diplomatic Security Management Logistic Services division.

16.     On or about March 2016, and continuing thereafter, Defendant engaged in unlawful employment practices in violation of Title I of the ADA, 42 U.S.C. § 12112(a) and (b), by discriminating against Charging Party LaRufus Mitchell on the basis of disability, and in violation of § 12203(a), by retaliating against Charging Party, as follows:

(a)     In April 2014, Charging Party began working for MSDS as a security specialist, project manager, and analyst.  Throughout her employment with MSDS, Charging Party worked at DS in its Diplomatic Security Management and Logistic Services division.

(b)     Charging Party was qualified for the jobs she held while employed by MSDS.

(c)      Before MSDS hired Charging Party, she had trained with DS as a special agent from approximately January to September 2013.  DS dismissed her from training shortly before graduation, allegedly because she could not complete the timed run test without an accommodation.  Following her removal from the training program, Charging Party filed a grievance against DS alleging that the Department violated the ADA when it failed to accommodate her.  While that grievance was pending, DS placed Charging Party in a civilian position in its Diplomatic Security Management Logistic Services division.

(d)      While Charging Party worked for DS in a civilian capacity, she continued to pursue her ADA claim against the Department.  After she exhausted all internal remedies and her removal from federal services was pending, she was hired by MSDS, where she would be able to continue her work for DS uninterrupted.

(e)      MSDS hired Charging Party in April 2014.  As a result, she continued to work at DS in the same position she had held in diplomatic security.

(f)      Charging Party continued pursuing her disability complaint against the Department and, in the fall of 2015, she filed ADA claims against DS in federal court.

(g)      After MSDS hired Charging Party, the company learned that she had filed ADA complaints against DS.

(h)      After MSDS hired Charging Party, the company learned that she had Post-Traumatic Stress Disorder (PTSD) and Panic Disorder.

(i)      In March 2016, shots were fired at Charging Party's vehicle while she was driving into the parking garage at her apartment building.  Charging Party's doctors concluded that the shooting triggered PTSD and Panic Disorder, and they recommended a period of medical leave followed by a gradual return to the workplace.

(j)      From approximately March to May 2016, Charging Party was on a medical leave of absence necessitated by her disability.

(k)      While processing Charging Party's request for medical leave, MSDS chastised her for not having disclosed the ADA complaint that she had filed against DS, complaining that the lawsuit compromised MSDS's relationship with DS.

(l)      In early June 2016, Charging Party's doctor told MSDS and DS that she could return to work the following week, assuming the employer granted her accommodations to reduce symptom-triggering stressors that exacerbate PTSD and Panic Disorder.

(m)     The accommodations sought in early June 2016, which included proposed telework hours, and a gradual return to work at the DS site, were reasonable.  The doctor proposed a "stair progression" return-to-work plan that would begin on June 13, 2016, and would continue until Charging Party's anticipated re-evaluation in late June.

(n)      At various times during Charging Party's medical leave, MSDS told her that she should have disclosed to the company her ADA complaints against DS.  MSDS told Charging Party that she had put the company in a difficult position by doing so, and repeatedly told her that she should not have filed ADA complaints against the Department.

(o)      MSDS did not respond to Charging Party's request for accommodations until after she had already begun working pursuant to the return-to-work plan on June 13, 2016.  That evening, MSDS told Charging Party that her request to telework had been denied and ordered her to report to the DS worksite.

(p)      Charging Party complied with MSDS's directive and reported to DS on June 14, 2016.

(q)      The reasons MSDS asserted for why Charging Party's telework accommodation

request was denied were a pretext for disability discrimination and retaliation.

(r)     From approximately June 14 through June 22, Charging Party worked at the DS site as directed, which caused her PTSD symptoms to worsen.

(s)     MSDS refused to pay Charging Party for telework hours performed on at least three (3) days in June.

(t)     After her request to telework was denied and her PTSD symptoms worsened, Charging Party hired a lawyer to communicate with MSDS and DS about her requested accommodations.   On June 23, 2016, Charging Party again asked MSDS to grant her request for accommodations and allow her to return to work consistent with her doctor's recommended return-to-work plan.

(u)     From March through and including July 2016, MSDS delayed considering or granting accommodations to Charging Party, withheld her pay or delayed paying her for hours worked, and otherwise exposed Charging Party to hostility, resentment, and other unwelcome conduct because of her disability and protected activity.

(v)     On or about July 11, 2016, Charging Party's doctor proposed a new return-to-work plan recommending continued accommodations for approximately five (5) weeks.   The new plan recommended reduced telework, in part because MSDS had reacted so negatively to the initial request for accommodations, denied permission to telework initially, refused to pay for telework hours, and otherwise discriminated and retaliated against Charging Party.

(w)     The July 11th return-to-work plan recommended that Charging Party return to full-time work in the office, with a 4/10 alternative-work-schedule and work day beginning at 6:00 a.m., beginning on August 18, 2016.

(x)     MSDS delayed responding to Charging Party's July 11th request for accommodations, contending that the company was unavailable through July 26th to consider the matter.

(y)     During this period, Charging Party suffered interruptions in her receipt of insurance benefits because MSDS provided information to the disability insurance carrier incorrectly portraying her as working a full-time schedule.  At the same time, MSDS refused to pay Charging Party for hours she worked on the July 4th holiday because the company claimed that only full-time employees were entitled to such payment.  MSDS's continued interference with Charging Party's benefits, employee status, and pay compromised her medical treatment and further contributed to the hostile work environment to which she had been subjected from at least March 2016.

(z)     Beginning in mid-July when MSDS learned that Charging Party sought continued accommodations through August 18, when she expected to return to full-time work at DS, MSDS began searching for justification to terminate her employment.

(aa)    On July 29, 2016, MSDS sent DS an email speculating that Charging Party probably would ask for more accommodations after she returned in mid-August, and suggesting that if she did so she should be replaced.

(bb)    On or about August 2, 2016, MSDS told Charging Party that after she returned to a full-time schedule on August 18, MSDS would deny all future requests for accommodations.  MSDS told Charging Party that if she did not report to the DS worksite on August 22, 2016, and continue working an unmodified schedule thereafter, she would be fired.

(cc)    On August 11, 2016, Charging Party contacted MSDS again about the modified

schedule her psychiatrist recommended for her return to full-time work.  MSDS replied that all accommodations were expiring and that no further accommodations would be granted.

(dd)    Charging Party returned to full-time office work at DS on August 18, 2016, as anticipated.

(ee)    On August 30, 2016, MSDS again told Charging Party she was not entitled to any continued or future accommodations and that any previously granted accommodations had expired.  Further, MSDS rejected telework as an accommodation, insisting that future requests to telework had to be approved "without any consideration" about whether telework constituted a disability-related accommodation.

(ff)    On October 3, 2016, MSDS called Charging Party to a meeting and fired her.

(gg)    MSDS fired Charging Party because the company concluded that her disability complaint against DS constituted a conflict of interest that prohibited her continued employment.  More specifically, MSDS alleged that Charging Party could not remain employed with the company because she was involved in ADA litigation against DS.

17.    Charging Party LaRufus Mitchell is a person with a disability, as defined by the ADA.

18.    MSDS discriminated against Charging Party in violation of Section 12112(a) and (b) and Section 12203(a) of the ADA when the company: subjected her to disparate terms and conditions because of disability; subjected her to an unlawful hostile work environment; took adverse employment action against her because of disability, including terminating her employment; failed to make reasonable accommodations to known physical or mental limitations; denied her employment opportunities based on the need to make reasonable accommodations to

known physical or mental impairments; and retaliated against her because she engaged in protected activity.

19.     The alleged legitimate reasons for the adverse action taken against Charging Party are a pretext for unlawful discrimination and/or retaliation.

20.     The effect of the practices identified above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect her status as an employee on the basis of disability, in violation of the ADA.

21.     The unlawful employment practices identified above were intentional.

22.     The unlawful employment practices identified above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

PRAYER FOR RELIEF

23.     Wherefore, the Commission respectfully requests that the Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from: discriminating against employees because of disability, including exposing them to an unlawful hostile work environment; maintaining a bias against disabled persons based on myths, fears, and stereotypes; interfering with the rights of persons secured by the ADA; refusing to grant reasonable accommodations to known limitations as required by the ADA; taking adverse employment action against persons because of the need to make future accommodations under the ADA; and retaliating against persons because they engage in protected activity.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and

which eradicate the effects of its past and present unlawful employment practices.

C.       Order Defendant to make whole Charging Party, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Charging Party or, in lieu thereof, front pay.

D.       Order Defendant to provide compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.       Order Defendant to provide compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F.       Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.       Grant such further relief as the Court deems necessary and proper in the public interest.

H.       Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.


Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Washington, D.C.

JAMES L. LEE
Acting General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

          /s/
_____
DEBRA LAWRENCE
Regional Attorney
Philadelphia District Office
(signed by Jessi Isenhart with Permission of Debra Lawrence)

          /s/
_____
KATE NORTHRUP
Supervisory Trial Attorney
Baltimore Field Office
kate.northrup@eeoc.gov
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Tel. (410) 209-2722
(signed by Jessi Isenhart with Permission of Kate Northrup)

          /s/
_____
JESSI ISENHART
Senior Trial Attorney
Cleveland Field Office
jessi.isenhart@eeoc.gov
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
Tel. (216) 522-7676
Fax (216) 522-7430