# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civ. Action No. 8:18-cv-02917-PX |
| MSDS CONSULTANT SERVICES, LLC, | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

Pending in this disability discrimination case is a motion for default judgment filed by the U.S. Equal Employment Opportunity Commission ("EEOC") against MSDS Consulting Services, LLC ("MSDS" or "Defendant"). ECF No. 16. MSDS has not responded, and the time for doing so has passed. *See* Loc. R. 105.2. For the following reasons, the motion is GRANTED.

### I. BACKGROUND

MSDS is a government contractor providing personnel to the U.S. Department of State ("DOS"). ECF No. 1 ¶ 15. The claimant, LaRufus Mitchell ("Mitchell"), worked at DOS as an MSDS employee from April 2014 to October 2016. *Id.* ¶¶ 5, 14, 16(e), (ff). Prior to her employment with MSDS, Mitchell had begun training at DOS to become a special agent. *Id.* ¶ 16(c). DOS terminated Mitchell from the training program shortly before her graduation in 2013. *Id.* In response, Mitchell filed a formal grievance against DOS, alleging that her termination amounted to disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq. Id.*

While the grievance was pending, DOS assigned Mitchell to a civilian position in the Diplomatic Security Management Logistic Services division ("DSMLS"). *Id.* Then, in April 2014, MSDS hired Mitchell but kept her in the same job assignment that she had at DSMLS. *Id.* ¶¶ 16(d), (e). As for her ADA claims against DOS, the grievance process concluded by 2015, at which time Mitchell filed formal suit against DOS in federal court. *Id.* ¶ 16(f). MSDS was aware of the suit shortly after Mitchell filed it. *Id.* ¶ 16(g).

In March 2016, Mitchell was driving into the parking garage of her apartment building when shots were fired at her car. *Id.* ¶ 16(i). The incident aggravated Mitchell's Post-Traumatic Stress Disorder ("PTSD") and Panic Disorder. *Id.* Her doctor recommended that she take medical leave from work to recover and return to the workplace gradually. *Id.* Mitchell was on medical leave from March through May of 2016. *Id.* ¶ 16(j).

In early June 2016, Mitchell's doctor re-evaluated her and recommended a gradual "return-to-work" plan. *Id.* ¶¶ 16(l), (m). The plan combined on-site and telework, with the telework tapering off as her health improved. *Id.* ¶¶ 16(l), (m), (w), (y), (bb). Mitchell requested that MSDS implement the plan to take effect June 13, 2016. *Id.* ¶ 16(m). On the evening of June 13, however, MSDS summarily denied this accommodation request and ordered that she physically report to the worksite the following day. *Id.* ¶ 16(o).

Mitchell did as she was ordered. *Id.* ¶ 16(p). She reported to the job site from June 14 to June 22, 2016. *Id.* ¶ 16(r). Doing so, however, worsened her PTSD and panic disorder. *Id.* ¶¶ 16 (p), (r). So, she hired a lawyer who requested again that MSDS implement her physician's recommended telework plan. *Id.* ¶ 16(t). After considerable delay, MSDS ultimately granted this request. *Id.* ¶ 16(u). In the interim, MSDS also withheld Mitchell's pay for several days of completed telework. *Id.* ¶¶ 16(s), (v). MSDS also told Mitchell's disability insurance carrier

2

that Mitchell had resumed full-time work, a misrepresentation that prompted the carrier to suspend temporarily her disability benefits. *Id.* ¶ 16(y).

Mitchell again returned to her doctor on July 16th for a follow-up evaluation. *Id.* ¶ 16(v). The doctor revised her accommodation plan again. *Id.* Specifically, her doctor advised that she continue working part-time until August 18, 2016, followed by working an "alternative 4/10 schedule"—four days of in-office work at ten hours a day beginning at 6 a.m., with the fifth day off. *Id.* ¶ 16(w). MSDS responded that it could not even "consider the matter" until July 26, 2016. *Id.* ¶ 16(x).

On July 29, 2016, MSDS emailed DOS that it planned to replace Mitchell on the contract if she requested any further accommodations, effectively denying her most recent accommodation request. *Id.* ¶ 16(aa). MSDS did not tell Mitchell of its decision until August 2, 2016. *Id.* ¶ 16(bb). MSDS made clear to Mitchell that if she did not report to the DOS worksite for fulltime on-site employment once her current plan expired, she would be fired. *Id.*

Mitchell returned to full-time office work on August 18, 2016. *Id.* ¶ 16(dd). Both before and after her return, she asked MSDS to reconsider her accommodation request. *Id.* ¶¶ 16(cc), (ee). MSDS' position remained unchanged. *Id.*

On October 3, 2016, MSDS terminated Mitchell. *Id.* ¶ 16(ff). The reason given for her firing was her continued ADA lawsuit against DOS. *Id.* ¶ 16(gg). In response, Mitchell timely filed a formal charge against MSDS with the EEOC. *Id.* ¶ 8. On April 6, 2018, the EEOC issued a Letter of Determination to MSDS on April 6, 2018, finding reasonable cause to believe MSDS had violated the ADA and inviting MSDS to participate in an informal conciliation process. *Id.* ¶ 9. These efforts were unsuccessful, and the EEOC ultimately issued a Notice of Failure of Conciliation on May 31, 2018. *Id.* ¶¶ 11, 12.

EEOC next filed this action on September 20, 2018 and properly served MSDS on November 1, 2018. ECF Nos. 1 & 4. After MSDS failed to enter an appearance or respond to the Complaint, the Clerk entered an Order of Default on April 5, 2019. ECF No. 12.

This Clerk's entry evidently grabbed the attention of someone at the corporation because on May 3, 2019, MSDS requested that the Court vacate the Clerk's entry of default. ECF No. 15-1. This Court struck the filing on the grounds that a corporation cannot proceed *pro se*. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993); *see also* Loc. R. 101(a). The Court further advised MSDS that it must retain counsel to pursue the matter on its behalf.

The case lied fallow for several months during the COVID-19 pandemic. On October 20, 2020, the EEOC moved for default judgment pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 16. EEOC mailed the motion and accompanying documents to MSDS' last known address, and the Court allowed MSDS until May 25, 2021 to secure counsel and respond to the motion. ECF Nos. 18 & 19. MSDS has not done so,[1] and so the motion is now ripe for consideration.

## II. STANDARD OF REVIEW

Rule 55(a) provides that "[w]hen a party against whom a judgement for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A defendant's default does not automatically entitle the plaintiff to the entry of a default judgment; rather, that decision is left to the discretion of the court. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md.

---

[1] Daryl Corley, who is believed to be affiliated with MSDS, filed a letter on May 23, 2021, informing the Court that MSDS is defunct. ECF No. 20. But MSDS has not obtained counsel to defend against default judgment. *Id.*

2005). Although the Fourth Circuit maintains a "strong policy that cases be decided on the merits," default judgement may be appropriate where a party is unresponsive. *Id.* (quotation omitted).

When considering a motion for default judgment, the court takes as true all the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Taking those facts as true, the court must then apply the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). The Court must disregard legal conclusions, as well as "naked assertion[s] devoid of further factual enhancement," *id.* (quotation omitted), and decide whether the "well-pleaded allegations" are sufficient to establish liability, *Ryan*, 253 F.3d at 780 (citation omitted).

Provided liability is established, the kind of available damages are circumscribed by those pleaded in the Complaint. *See* Fed. R. Civ. P. 54(c) (Damages "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). However, the Court cannot rely on complaint allegations to support a damages award on a default judgment. *See Lawbaugh*, 359 F. Supp. 2d at 422; *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009). Rather, the movant must supply sufficient record evidence to support requested damages. *See Ryan*, 253 F.3d at 780; *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010). The Court may consider such evidence supplied in the pleadings or at an evidentiary hearing if warranted. *See Monge*, 751 F. Supp. 2d at 795 (citation omitted).

### III. DISCUSSION

#### A. Liability

The ADA forbids employers from intentionally discriminating against persons with disabilities. 42 U.S.C. § 12112(a)-(b). Discriminatory conduct actionable under the ADA includes denial of reasonable accommodation for an employee's known physical or mental disabilities. *See id*. § 12112(b)(5)(A); *Shin v. Univ. of Md. Med. Syst. Corp.*, 369 F. App'x 472, 479 (4th Cir. 2010). The ADA also permits a cause of action for disability discrimination, hostile work environment, or retaliation. *See Tyndall v. Nat'l Educ. Ctrs. Inc., of Cal.*, 31 F.3d 209, 212 (4th Cir. 1994) (disability discrimination); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 175 (4th Cir. 2001) (hostile work environment); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001) (retaliation). The EEOC pursues several theories of relief for Mitchell. The Court considers each in turn.

##### 1. Failure to Accommodate Claim

The Court first reviews the failure to accommodate claim. As part of the ADA's comprehensive remedial scheme, an employer is prohibited from discriminating against a disabled employee by failing to reasonably accommodate her disability. *See Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 697 (D. Md. 2005). An accommodation is "reasonable" if it addresses the job-related difficulties arising from the employee's disability, and "allow[s] the employee to attain an 'equal' level of achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve." *Id.* at 699–700 (quoting *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 736 (D. Md. 1996)); *see also E.E.O.C. v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 102–03 (D. Md. 2019). Such accommodations may include permitting the employee to work on a part-time or modified

schedule, reassignment to a vacant position, or provision of specific equipment. *See* 42 U.S.C. § 12111(9)(B).

To establish a prima facie case for failure to accommodate, the plaintiff must show that she (1) is an individual who had a disability within the meaning of the statute,[2] (2) that the employer had notice of her disability, (3) that with reasonable accommodation she could perform the essential functions of the position, and (4) that the employer refused to make such accommodations. *See Rhoads*, 257 F.3d at 387 n.11 (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

Relevant here, the ADA requires that "the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Cap. Mgmt.*, 131 F. App'x. 399, 400 (4th Cir. 2005) (citation omitted). An employer's obligation in this respect is "not exhausted by one effort." *Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d at 109 (quotation omitted). Moreover, an employer's failure to communicate or refusal to act in good faith to identify a reasonable accommodation reflects that the employer "is not acting in good faith to find a solution." *Fleetwood*, 380 F. Supp. 2d at 701 (citation omitted).

When taking the Complaint facts as true, the EEOC has established that MSDS failed to provide Mitchell reasonable accommodations as required under the ADA. It is not controversial that Mitchell suffers from PTSD and Panic Disorder, and so is disabled within the meaning of the ADA. ECF No. 1 ¶¶ 16(i), 17; *see Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 (4th Cir. 2004). MSDS also had notice of her disability. ECF No. 1 ¶¶ 16(j), (m), (t), (aa), (cc),

---

[2] The term "disability" is defined as (1) a physical or mental impairment that substantially limits one or more major life activities of such individual, (2) a record of such impairment, or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1).

(ee). Further, the allegations plausibly establish that MSDS denied Mitchell reasonable accommodations on several occasions without explanation or meaningful counter proposal.

When MSDS received Mitchell's first doctor-recommended "return to work" plan, MSDS sat on its hands until the plan had already gone into effect, and then denied the plan. *Id.* ¶ 16(o). Similarly, when Mitchell submitted a revised plan in mid-July, MSDS waited until August 2 to reject it without engaging in any interactive process. *Id.* ¶ 16(bb). MSDS instead informed DOS that if Mitchell requested any further accommodation, she would be fired. *Id.* MSDS, in fact, repeatedly sent Mitchell the message that all future requests for accommodation, no matter their terms, would be denied. *Id.* In short, MSDS' course of conduct establishes that it failed to accommodate reasonably Mitchell's disability.

### 2. Hostile Work Environment

The EEOC further urges the Court to grant default judgment as to the hostile work environment claim. Here, Plaintiff must show that Mitchell: (1) is disabled; (2) was subjected to unwelcome harassment; (3) based on her disability; (4) that was sufficiently severe or pervasive to alter a term, condition or privilege of employment; and (5) that liability is imputable to the employer. *See Fox*, 247 F.3d at 177. As to whether the work environment is sufficiently "hostile," the Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Fox*, 247 F.3d at 178 (same). That said, the factors must not be applied as "mathematically precise test," as "no single factor is required" to establish a hostile work environment. *Harris*, 510 U.S. at 22–23. But a plaintiff must do more than simply characterize her work environment as hostile; she must allege facts to support such a claim. *See*

*Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d, 761, 765 (4th Cir. 2003) ("The words 'hostile work environment' are not talismanic, for they are but a legal conclusion."). A hostile work environment may derive from an employer's serial denial of benefits, work schedules, and accommodations. *See Bluey v. Charles Cty.*, No. DKC 19-3163, 2020 WL 5203334, at *11 (D. Md. Sept. 1, 2020) (personnel decisions that, taken independently, may not be harassment creating hostile work environment, may be such when plaintiff alleges actions formed concrete effort to intimidate her); *Pueschel v. Peters*, 577 F.3d 558, 566 (4th Cir. 2009) (holding that failure to allege health benefits improperly processed because of disability did not support claim for hostile work environment).

The Complaint facts establish this claim. For nearly six months after Mitchell returned from medical leave, MSDS engaged in a pattern of ignoring, delaying, and denying her requests for accommodation. ECF No. 1 ¶¶ 16(m)-(ff). MSDS also supplied Mitchell's disability insurance carrier, indeed her medical benefits lifeline, the *wrong* information that prompted the carrier to cut off her benefits for a time. *Id.* ¶¶ 16(s), (y). As a result, her PTSD and Panic Disorder symptoms worsened, leading to the vicious cycle of requiring further accommodation. *Id.* ¶¶ 16(r), (y), (bb), (cc). On these facts, the EEOC is entitled to default judgment on this claim.

### 3. Retaliation

An ADA retaliation claim requires the plaintiff to show that: "(1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action." *Rhoads*, 257 F.3d at 392 (citations omitted). An employee's request for accommodations constitutes protected activity under the ADA. *Sillah v. Burwell*, 244 F. Supp. 3d 499, 510 (D. Md. 2017) (citing *Haulbrook v. Michelin*

9

*N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001)). Filing a formal charge of discrimination does as well. *See* 42 U.S.C. § 12203(a).

The Complaint makes plain that Mitchell engaged in protected activity. She had filed a formal charge against DOS, the government agency with whom MSDS placed personnel like Mitchell, and then requested directly of MSDS reasonable accommodation. ECF No. 1 ¶¶ 16(f), (o). In response, MSDS admitted that it terminated Mitchell because she was pursuing her ADA claim against DOS. *Id.* ¶¶ 16(ff), (gg). MSDS also stated that if Mitchell continued to request accommodations, she would be replaced, and told Mitchell she would be fired if she did not return to the work site and work an unmodified schedule. *Id.* ¶ 16(aa), (bb). Accepting these facts as true, default judgment is proper on the retaliation claim.

### B. Relief

Having found that the EEOC, on Mitchell's behalf, is entitled to judgment as to the claims, the Court next turns to the relief sought.

#### 1. Damages

EEOC requests backpay, prejudgment interest, front pay, as well as punitive damages. ECF No. 16 ¶ 4(a). Money damages of this kind are available under the ADA. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981a). But the EEOC has not submitted any evidence that would allow this Court to calculate compensatory damages including backpay, prejudgment interest, and front pay. Thus, the Court will defer on a damages ruling, giving the EEOC one opportunity to submit the requisite evidence.

The Court will also defer ruling on the EEOC's request for punitive damages. A plaintiff seeking such damages on an ADA claim must prove that the employer engaged in discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved

individual." 42 U.S.C. § 1981a(b)(1). A plaintiff need not prove malice if she can demonstrate "recklessness in its subjective form." *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999)). To prove recklessness, "a plaintiff must establish that the employer at least discriminated in the face of a perceived risk that its actions [would] violate federal law." *Id.* (quotation omitted). The Supreme Court made clear in *Kolstad* that "malice" and "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law, *not* its knowledge that it may be discriminating. 527 U.S. at 527; *see also Anderson v. GDC Inc.*, 281 F.3d 452, 460 (4th Cir. 2002).

Therefore, to warrant punitive damages on a motion for default judgement, a plaintiff must demonstrate that defendant knew it "may be acting in violation of federal law." *E.E.O.C. v. CDG Mgmt., LLC*, No. RDB–08–2562, 2010 WL 4904440, at *6 (D. Md. Nov. 24, 2010) (quotation omitted). This Court has a "great deal of discretion" in deciding the amount of punitive damages to award, and the Court simply does not have enough information or evidence before it to make a determination either way. *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1279–80 (D. Kan. 2016) (quoting *Carlson v. Green*, 446 U.S. 14, 48 (1980)). Thus, if the EEOC still wishes to pursue this request, it must submit evidence showing that the Defendant acted with the requisite state of mind and supporting the specific award amount requested. *See id.* at 1280 (looking to the "character of the wrong," the "amount necessary to punish the defendant," and the defendant's "financial condition"); *see also E.E.O.C. v. Port Aviation Servs., LLC*, No. FDS-18-10909, 2020 WL 1550564, at *10 (D. Mass. Apr. 1, 2020) (quotation omitted).

### 2. Injunctive Relief

The EEOC seeks broad injunctive relief to prohibit MSDS and those who act "in concert or participation with it" from discriminating against persons with disabilities and generally engaging in activity that violates the ADA. ECF No. 1 ¶ 23(A). Injunctive relief is available only where the defendant "has intentionally engaged" in an unlawful employment practice. 42 U.S.C. § 2000e–5(g)(1); *see E.E.O.C. v. Waffle House*, 534 U.S. 279, 285 (2002). The Court may issue such relief to fulfill the "prophylactic purposes" of the statute and to eradicate purposeful disability discrimination. *Spencer v. Gen. Elec. Co*, 894 F.2d 651, 660 (4th Cir. 1990), *abrogated on other grounds by Farrah v. Hobby*, 506 U.S. 103 (1992); *see also Reyazuddin v. Montgomery Cty.*, 276 F. Supp. 3d 462, 471–72 (D. Md. 2017). However, such relief is "not mandatory," *Reyazuddin*, 276 F. Supp. 3d at 472, and the "issuance of an injunction rests in the sound discretion of the district court," *Aviation Port Servs.*, 2020 WL 1550564, at *11 (quoting *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1135 (8th Cir. 1981)). "Before granting injunctive relief, the court must … conclude that a 'cognizable danger of recurrent violation' exists." *Reyazuddin*, 276 F. Supp. 3d at 472 (quoting *United States v. Hunter*, 459 F.2d 205, 210 (4th Cir. 1972)). Likewise, any injunction issued should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]." *Aviation Port Servs.*, 2020 WL 1550564, at *11 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Given this standard, the Court will deny the EEOC's request for injunctive relief. The EEOC asks this Court to enjoin Defendant from "committing further violations of federal law," which is exactly the "sort of go-thy-way-and-sin-no-more provision" the Fourth Circuit has rejected. *Lowery v. Circuit City Stores*, 158 F.3d 742, 767 (4th Cir. 1998), *abrogated on other*

*grounds in light of Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999); *see also Davis v. Richmond, Fredericksburg & Potomac R.R. Co.*, 803 F.2d 1322, 1328 (4th Cir. 1986). The requested injunction simply mirrors the terms of the ADA, when MSDS is bound already adhere to the statute absent such an injunction. *See Davis*, 803 F.2d at 1328 (rejecting general "obey the statute" injunctions); *see also Aviation Port Servs.*, 2020 WL 1550564, at *12 (rejecting these kinds of injunctions as "vague" and "overbroad") (citing other cases).

Furthermore, no facts support that MSDS engaged in similar discrimination apart from how it treated Mitchell, who no longer is employed there. *See Aviation Port Servs.*, 2020 WL 1550564, at *11 (discussing *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 361 n.23 (1st Cir. 1989)); *see also id.* at *12 ("In order for the court to issue such an injunction against possible future discrimination, the moving party must demonstrate that there exists some cognizable danger of recurrent violations, something more than a mere possibility." (quoting *E.E.O.C. v. General Lines, Inc*., 865 F.2d 1555, 1565 (10th Cir. 1989))). Finally, the Court cannot ascertain how additional evidence in this respect would change its decision, or somehow make injunctive relief necessary to afford "complete relief" or prevent against possible future violations. *Lowery*, 158 F.3d at 767; *see also Reyazuddin*, 276 F. Supp. 3d at 472 (quoting *Hunter*, 459 F.2d at 210). The EEOC's request for injunctive relief is denied.

## IV. CONCLUSION

In sum, the Court GRANTS Plaintiff EEOC's motion for default judgement as to liability. ECF No. 16. The Court will afford the EEOC an opportunity to supplement the record

on compensatory and punitive damages consistent with this opinion. The request for injunctive relief is DENIED. A separate Order follows.

| _6/25/2021_ | _/s/_ |
|---|---|
| Date | Paula Xinis<br>United States District Judge |