IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 8:18-cv-02917-PX |
| MSDS CONSULTANT SERVICES, LLC, | * * | |
| Defendant. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff United States Equal Employment Opportunity Commission ("EEOC")'s request for damages in connection with default judgment previously entered against Defendant MSDS Consultant Services, LLC ("MSDS"). ECF Nos. 21, 31. On August 20, 2021, the EEOC submitted a supplemental memorandum of law and record evidence supporting the requested relief. ECF No. 31. MSDS has not responded, and the time for doing so has passed. *See* Loc. R. 105.2; Fed. R. Civ. P. 55(b)(2). For the reasons stated below, the Court GRANTS the motion.

**I.    Background**[1]

The EEOC sued MSDS on behalf of claimant, LaRufus Mitchell, for disability discrimination, hostile work environment, and failure to accommodate her disabilities while she was working at MSDS from 2014 to 2016, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *See* ECF No. 1. The Complaint averred that as to damages, Mitchell is entitled to backpay, prejudgment interest, front pay, punitive damages, and injunctive relief. ECF No. 16 ¶ 4.

---

[1] The Court's June 25, 2021 Memorandum Opinion set forth the facts relevant to entry of default judgment against MSDS Consultant Services, LLC, and which are incorporated by reference. *See* ECF No. 21 at 1–4.

After MSDS failed to secure counsel and respond to the Complaint, the Clerk entered an Order of Default on April 5, 2019. ECF No. 12. On April 30, 2019, MSDS requested that the Court vacate the Clerk's entry of default. ECF No. 15-1. MSDS was still unrepresented at the time, and so the Court struck the filing and directed MSDS to obtain counsel or risk default judgment. ECF No. 21 at 4. The EEOC, in turn, moved for default judgment pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 16. MSDS failed to respond.

On June 25, 2021, the Court issued a Memorandum Opinion and Order granting default judgment against MSDS as to all three theories of liability. ECF No. 21, 22. As to damages, the Court denied the EEOC's request for injunctive relief, but granted EEOC leave to supplement the record. ECF No. 21 at 10, 12. The EEOC now renews its request for back pay, front pay, prejudgment interest, compensatory and punitive damages, and post-judgment interest on Mitchell's behalf. ECF No. 31.

## II.     Standard of Review

Even when liability has been established by an order of default judgment, allegations "relating to the amount of damages" are not established merely because a defendant failed to participate in the action. *See* Fed. R. Civ. P. 8(b)(6); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). Rather, the plaintiff must supply sufficient evidence to support the requested damages. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010). The Court may, but is not required to, hold a hearing to receive evidence on requested damages. *Id.*; *see Tr. of the Nat. Asbestos Workers Pension Fund. v. Ideal*

*Insulation Inc.*, No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (collecting cases).

The kinds of damages available are limited by those pleaded in the Complaint. *See* Fed. R. Civ. P. 54(c) (Damages on default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). But the Court must make "an independent determination of the sum to be awarded." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373–74 (D. Md. 2012) (quoting *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). The moving party bears the burden of proving damages by a preponderance of the evidence. *See, e.g.*, *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967).

**III.    Analysis**

As a preliminary matter, the Court finds that each category of requested damages is fairly circumscribed by the Complaint. *See* ECF No. 1. The Court next turns to whether each request is supported by the evidence.

**A.    Back Pay**

The EEOC first argues that Mitchell should receive back pay from the date of her termination on October 3, 2016, through the date of judgment. ECF No. 31 at 2. The EEOC specifically requests $210,492.02 in lost wages, $15,949.59 in lost paid time off ("PTO") benefits, $26,928.14 in prejudgment interest on lost wages, $2,399.85 in prejudgment interest on lost PTO benefits, and $6,710.96 in lost medical insurance and out-of-pocket medical expenses. *Id.*

The ADA authorizes the Court to award back pay and prejudgment interest. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981a); *see also Est. of*

3

*Allen v. Baltimore Cnty*, No. CCB-13-3075, 2017 WL 6508930, at *6 (D. Md. Dec. 20, 2017). Whether to award backpay and prejudgment interest is left to the discretion of the trial court. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975). The ADA incorporates the "remedies and procedures" established in Title VII, *see* 42 U.S.C. § 12117(a), which includes back pay for plaintiffs who succeed in their Title VII claims. *Dennis v. Columbia Collection Med. Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002) (citing *Albemarle*, 422 U.S. at 421). Upon a finding of discrimination, "[b]ack pay 'should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.'" *Id.* (quoting *Albemarle*, 422 U.S. at 421) (addressing Title VII).

That said, backpay "should only make the wrongly discharged employee monetarily whole under his employment contract," and not accord the plaintiff a "windfall." *Cline v. Roadway Exp., Inc.*, 689 F.2d 481, 490 (4th Cir. 1982). The Court may award backpay for the period from termination of employment to judgment, and may include the salary, raises, and fringe benefits that the employee would have received absent the discriminatory conduct. *See Long v. Ringling Bros. Barnum & Bailey Combined Shows, Inc.* 9 F.3d 340, 343 (4th Cir. 1993) ("Under Title VII a prevailing plaintiff is entitled to make whole relief. . . . This may include the value of fringe benefits.") (internal citation and quotes omitted); *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 269 (4th Cir. 1976) (backpay may be awarded "for a period commencing at the time the employee was unlawfully denied a position until the date of judgment."). The backpay award is calculated by totaling the employee's lost wages and benefits, less any amounts earned by the employee's efforts to mitigate her loss through subsequent employment or that could have been earned through the exercise of "reasonable diligence." *See* 42 U.S.C. § 2000e-5(g)(1).

4

The Court begins with the proper measure of lost wages from Mitchell's termination through judgment. The EEOC urges the Court to adopt its calculation of a "gross monthly rate" by factoring in Mitchell's wages earned, including overtime and bonus payments. ECF No. 31 at 4–10. The EEOC argues that the award should reflect a 3.9% annual increase in this monthly rate. *Id.*

The Court agrees that Mitchell should be compensated for lost wages and fringe benefits but disagrees with the EEOC's method of calculation. The Court will, more simply, calculate Mitchell's hourly rate multiplied by hours worked for the applicable years. Overtime and medical expenses will not be included in this base rate, but will be calculated separately and added to the backpay award. *See, e.g.*, *Hylind v. Xerox Corp.*, 31 F. Supp. 3d 729, 741–42 (D. Md. 2014), *aff'd*, 632 Fed. Appx. 114 (4th Cir. 2015) (awarding backpay by calculating plaintiff's "base salary, [and] the average of the salaries she actually received in the preceding four years, allowing increases to reflect reasonably expected salary increases, and to account for inflation and wage growth."). The Court will also adjust the applicable hourly rate of pay upward each year to reflect the percentage increase Mitchell would have received for cost of living and other related increases. Lastly, the Court will subtract any actual earnings for the same period to arrive at a final backpay award.

First as to Mitchell's base pay, Mitchell's starting hourly wage at MSDS was $33.87. ECF No. 31-8. Mitchell thereafter received both cost-of-living adjustments and raises. ECF No. 31-2 ¶¶ 28–31. Specifically, her hourly rate increased from $33.87 as of April 2014 to $36.17 through September 2015, ECF No. 31-8; ECF No. 31-2 ¶ 29; then from $36.17 to $36.52 for the remainder of her employment. ECF No. 31-2 ¶¶ 29–30; ECF No. 31-7. Mitchell's hourly rate and percentage increase breaks down as follows:

| Starting Hourly Rate: | New Hourly Rate: | Approximate Rate of Increase: |
|---|---|---|
| $33.87 | $36.17 | 6.8% |
| $36.17 | $36.52 | 1% |
| **Total Percentage Increase:** | | **7.8%** |

Accordingly, the Court calculates that on average, Mitchell's hourly rate increased by 3.9% ([6.8 + 1] / 2).

Looking forward, for the period between Mitchell's termination and judgment, her adjusted hourly rate is as follows:

| Year | Hourly Rate | Increase | New Hourly Rate |
|---|---|---|---|
| 2016 | $36.52 | 3.9% | $37.94 |
| 2017 | $37.94 | 3.9% | $39.42 |
| 2018 | $39.42 | 3.9% | $40.96 |
| 2019 | $40.96 | 3.9% | $42.56 |
| 2020 | $42.56 | 3.9% | $44.22 |
| 2021 | $44.22 | | $44.22 |

Next, applying this hourly rate to a 40-hour work week over 52 weeks per year, Mitchell's adjusted yearly salary for the relevant period is:

| Year | Hourly Rate | No. Weeks | Total (rate * 40 * weeks) |
|---|---|---|---|
| 2016 (Oct. – Dec.) | $36.52 | 12 | $17,529.60 |

6

| | | | |
|---|---|---|---|
| 2017 | $37.94 | 52 | $78,915.20 |
| 2018 | $39.42 | 52 | $81,993.60 |
| 2019 | $40.96 | 52 | $85,196.80 |
| 2020 | $42.56 | 52 | $88,524.80 |
| 2021 (Jan – June) | $44.22 | 24 | $42,451.20 |
| **Total** | | | **$394,611.20** |

The Court next turns to requested overtime to be included in the backpay award. Mitchell attests that she routinely worked overtime at MSDS. ECF No. 31-2 ¶¶ 31–33 (145.5 hours in 2014, 80.5 in 2015, 16 hours for months in 2016). ECF No. 31 at 5; ECF No. 31-1 ¶¶ 32–33. Per MSDS policy, the company paid an hourly overtime rate of one-and-a-half times an employee's "straight-time" hourly rate. ECF No. 31-3 at 23. Using Mitchell's last year of employment as a guide, the EEOC conservatively estimates that Mitchell would have worked roughly 21 hours per year in overtime. ECF No. 31 at 5; ECF No. 31-1 ¶¶ 32–33. This estimate is indeed far lower than the actual overtime hours that Mitchell had worked in previous years. Thus, the Court accepts this average as conservatively estimated. For each year, using the adjusted hourly rates calculated above, the overtime award amounts to the following:

| Year | Rate | Time ½ Rate | Hours | Overtime Pay |
|---|---|---|---|---|
| 2016 (Oct.–Dec.) | $36.52 | $54.78 | 5 | $273.90 |
| 2017 | $37.94 | $56.91 | 21 | $1,195.11 |
| 2018 | $39.42 | $59.13 | 21 | $1,241.73 |
| 2019 | $40.96 | $61.44 | 21 | $1,290.24 |
| 2020 | $42.56 | $63.84 | 21 | $1,340.64 |

7

| | | | | |
|---|---|---|---|---|
| 2021 (Jan.–June) | $44.22 | $66.33 | 11.5 | $762.80 |
| **Total:** | | | | **$6,104.42** |

As to lost benefits, PTO is properly added to Mitchell's backpay calculation.  *See Fariss v. Lynchburg Foundry*, 769 F.2d 958, 964 (4th Cir. 1985) ("Overwhelming judicial authority recognizes that employers guilty of discrimination are liable for fringe benefits they would have provided to employees as well as back wages.").  MSDS' employment policy provided that had Mitchell remained an employee at MSDS, she would have accrued 5.67 hours of PTO per bi-monthly pay period, which if unused, would be paid at her "straight-time hourly rate."  ECF No. 31-3 at 26–27; ECF No. 31 at 5–6; ECF No. 31-2 ¶ 27.  Thus, PTO shall be awarded for each year per the below calculations:

| Year | Rate | Value of Monthly PTO Accrual (5.67 * 2 * hourly rate) | Number of Months | Accrued Value per Year |
|---|---|---|---|---|
| 2016 (Oct.–Dec.) | $36.52 | $414.14 | 3 | $1,242.42 |
| 2017 | $37.94 | $430.24 | 12 | $5,162.88 |
| 2018 | $39.42 | $447.02 | 12 | $5,364.24 |
| 2019 (Jan.–Sept.) | $40.96 | $464.49 | 9 | $4,180.41 |
| **Total:** | | | | **$15,949.95** |

*See also* ECF No. 31 at 12, Table D.

Last, the EEOC requests Mitchell be awarded out-of-pocket medical expenses and compensation for lost health insurance in 2017 and 2018.  ECF No. 31 at 12–13.  In the backpay context, "make whole" relief may include lost medical benefits.  *See Long*, 9 F.3d at 343 ("Under

Title VII a prevailing plaintiff is entitled to make whole relief. This may include the value of fringe benefits.") (internal citation and quotes omitted). The record, however, does not reflect the value of Mitchell's medical benefits while she had been employed at MSDS. ECF No. 31-2 ¶¶ 43–44. The Court has been given no information about the premiums paid for her insurance, who paid them, or any other measure that allows the Court to place a value on the lost benefit. The only evidence in this regard is that Mitchell subsequently purchased health insurance for some months in 2017 and 2018, with a total out-of-pocket cost of $3,120.48. Thus, the award is circumscribed to the provable loss of $3,120.48.

In sum, the Court finds that the total backpay calculation, including lost wages, overtime, and lost fringe benefits, is $419,786.05.[2] The Court next turns to the deductions and other adjustments to this backpay calculation.

**1. Deductions for Earned Wages**

A plaintiff requesting a backpay award must attempt to mitigate her losses by "seeking and accepting new employment substantially equivalent to that from which [she] was discharged." *Miller v. AT &T*, 250 F.3d 820, 838 (4th Cir. 2001) (*quoting Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985)). Failure to do so may preclude any backpay award, *id.*, but the defendant bears the burden of demonstrating that plaintiff failed to mitigate her losses. *Id.* (citing *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995)).

---

[2] The EEOC also asks the Court to factor in Mitchell's one time $100 bonus received in 2016. The record reflects that MSDS awarded bonuses to team members for employee referrals. *See* ECF No 31-3 at 16. The MSDS Employee Handbook also includes a description of "bonus/incentive plans" as "individual and team bonuses for outstanding performance." ECF No. 31-3 at 29. But no evidence reflects why Mitchell received the $100, or that she earned a bonus in 2017 or 2018. On this record, the Court cannot find that Mitchell would have received a similar bonus in the future.

Mitchell has exercised reasonable diligence to seek alternative employment. In 2016, she applied for dozens of positions and kept a detailed record of her search. ECF No. 31-16. In 2017 and 2018, she worked in long-term temporary positions, until finally securing fulltime employment in September 2019. ECF No. 31 at 7–8. In total, Mitchell earned $200,553.94 during the relevant backpay period, which will be deducted from the above backpay calculations. ECF Nos. 31-10–31-15, 31-26; ECF No. 31 at 7–8. Accordingly, the adjusted backpay award, including lost wages, overtime pay, and fringe benefits is $219,232.11.

### 2. Prejudgment Interest

The EEOC next requests that the Court award prejudgment interest on $26,928.14 of lost wages and $2,399.85 on PTO, which represents the portion of both awards from the date of Mitchell's termination until the Court granted default judgment in June 2021. The EEOC asks the Court to calculate the rate of prejudgment interest using the EEOSTAT PayCalc ("PayCalc"), commercial software that calculates interest using rates established by the Internal Revenue Service ("IRS") for calculating interest on unpaid taxes. ECF No. 31 at 10–11. PayCalc "calculates the amounts of backpay including interest that are due aggrieved individuals when [] suppl[ied] the pay they should have earned and the pay they did in fact earn." *See EEOSTAT for EEO Compliance: paycalc*, https://www.eeostat.com/paycalc/ (last visited Dec. 8, 2021). In its calculations, the EEOC compounds the interest monthly. ECF No. 31 at 11.

"The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *Feldman's Med. Ctr. Pharm. Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307, 324 (D. Md. 2011) (citing *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995)). Like backpay, whether to award prejudgment interest is a remedy left to the trial court's discretion. *See Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th

Cir. 1993) (citing *United States v. Gregory*, 818 F.2d 1114, 1118 (4th Cir. 1987)).  The Fourth Circuit Court has instructed that although prejudgment interest is an aspect of complete compensation, it may be appropriately denied when backpay is not readily ascertainable or when the plaintiff fails to timely request an award of prejudgment interest.  *Id.*

If the trial court determines that prejudgment interest is appropriate, the rate of prejudgment interest is likewise left to the trial court's discretion.  *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc); *see also Hylind v. Xerox Corp.*, 481 Fed. App'x 819, 822 (4th Cir. 2012) (unpublished).  The Court may, but is not required, to apply the interest rate provided for by local state law.  *EEOC v. Liggett & Myers*, 690 F.2d 1072, 1074 (4th Cir. 1982).  The Fourth Circuit has affirmed the application of state statutory prejudgment interest rates to backpay awards.  *See Quesinberry*, 987 F.2d at 1031 (affirming use of Virginia's statutory interest rate); *Liggett & Myers*, *Inc.*, 690 F.2d at 1074 (affirming use of North Carolina's statutory interest rate).  Further, in awarding backpay, "[c]ommon sense and equities dictate an award of compound interest."  *Hylind*, 749 F. Supp. 2d 340, 351 (D. Md. Sept. 17, 2010) (quoting *Cooper v. Paychex, Inc.*, 960 F. Supp. 966, 975 (E.D. Va. 1997)), *aff'd in part, rev'd in part and remanded*, 481 Fed. Appx. 819 (4th Cir. 2012).

The Court will award Mitchell prejudgment interest on her backpay.  Here, the EEOC provides a single out-of-circuit decision that approves using the IRS rate for calculating interest on unpaid taxes as the proper prejudgment interest percentage.  *See* ECF No. 31 at 4 (citing *EEOC v. Guardian Pools, Inc*., 828 F.2d 1057, 1512–13 (11th Cir. 1987)).  That said, the suggested interest rates are the same or lower than Maryland's statutory prejudgment interest rate of six percent per year.  *Compare* 26 U.S.C. § 6621 *with* Md. Const. Art. III § 57.  Given this, the

Court will adopt the EEOC's requested rate for prejudgment interest as set forth in Table C of the EEOC's memorandum.  *See* ECF No. 31 at 11.

| Year | Backpay Amount | Interest Rate[3] | Compounding Period (Annually)[4] | Compounded Interest |
|---|---|---|---|---|
| 2016 | $19,045.92 | .04 | 4.5 | $3,676.36 |
| 2017 | $52,107.81 | .04 | 3.5 | $7,667.18 |
| 2018 | $62,880.57 | .05 | 2.5 | $8,157.27 |
| 2019 | $60,329.03 | .05 | 1.5 | $4,580.77 |
| 2020 | $23,856.48 | .03 | .5 | $355.20 |
| 2021 | $0.00 | .03 | .5 | $0.00 |
| **Total:** | | | | **$24,436.78** |

As to the frequency of compounding the interest, the EEOC provides no explanation for its request to compound the interest monthly, as opposed to the more conservative method of compounding annually.  Absent sound reason to do otherwise, the Court compounds interest annually.  *See Hylind*, 31 F. Supp. 3d at 742 (awarding prejudgment interest at state statutory rate, compounded annually); *Cooper v. Paychex, Inc.*, 960 F. Supp. 966, 975 (E.D. Va. 1997) (same).[5]  Thus, Mitchell is awarded $24,436.78 in prejudgment interest.

---

[3] Where the IRS interest rates provide two rates for a single year, the Court calculates interest using the more frequently applied rate, or if equally applied, the lower rate.

[4] As compounded interest calculations can get complicated, the compounding period is rounded to the nearest whole month and calculated as if Mitchell's annual backpay award would have been due on January 1st of the following year, calculated through date of judgment. For 2021, the backpay is calculated from January 1, 2021 through date of judgment.

[5] The Court applies the following formula:  $m = (1 + r/n)^{nt}$ where the variables represent the following accrued amount (principal + interest); r = the prejudgment interest rate as a decimal; n = number of compounding periods per year; and t = prejudgment period in years.  *See Dominion Energy Transmission, Inc. v. 4.01 Acres, More*

**B.** **Front Pay**

The EEOC next argues that the Court should award $71,229.16 in front pay, the difference between Mitchell's current salary at the permanent position she obtained in 2019 and her projected 2021 salary had she remained an employee at MSDS for the five-year period in question. ECF No. 31 at 14. Front pay is an equitable remedy to be awarded when reinstatement is impracticable or unrealistic. *Pollard v. E. I. Du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001); *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991). The aim of front pay is to "place a plaintiff in the financial position [s]he would have been in had [s]he been reinstated." *Loveless v. John's Ford, Inc.,* 232 Fed. Appx. 229, 238 (4th Cir.2007) (per curiam). Front pay awards the victim of discrimination money for the loss of employment after the date of judgment. *Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513 F.3d 378, 388 (4th Cir. 2008).

Like back pay, an award of front pay is left to the Court's discretion. *Id.* Because of the inherently "speculative" nature of front pay, and to avoid "the potential for windfall," the Fourth Circuit has instructed that such an award "must be tempered." *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) (quoting *Duke*, 928 F.2d at 1423). The plaintiff bears the burden of presenting "the essential data necessary to calculate a reasonably certain front pay award." *Jones v. SouthPeak Interactive Corp. of Delaware*, 986 F. Supp. 2d 680, 686 (E.D. Va. 2013) (citing *Mcknight v. Gen. Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992)). In considering whether to award front pay, courts have examined the plaintiff's age and life expectancy, length of employment, likelihood of continuing employment, status as an at-will employee, ability to work for the defendant, efforts to mitigate damages, and any liquidated or

---

*or Less, in Wetzel* Cnty, No. 5:17-CV-184, 2019 WL 7835627, at *3 (N.D.W. Va. Sept. 24, 2019); *see also* Michael S. Knoll, *The Calculation of Prejudgment Interest*, University of Pennsylvania Law School: Faculty Scholarship at Penn Law (2005), https:// schoIarship.law.upenn.edu/faculty scholarship/114/ (last visited Dec. 21, 2021)).

punitive damages awarded to the plaintiff. *See Ogden v. WaxWorks, Inc.*, 29 F. Supp. 2d 1003, 1012-15 (N.D. Iowa 1998) (assembling cases from the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits).

The Court declines to award front pay to Mitchell. Although the EEOC maintains that front pay is necessary to "make [Mitchell] whole," the EEOC has not provided any evidence to support a "reasonably certain" front pay award. *See Jones*, 986 F. Supp. at 686. At best, the EEOC urges the Court to calculate the difference between a projected salary for 2021 had Mitchell continued to work at MSDS, and the current salary she earns at her job now. ECF No. 31 at 14. But MSDS went out of business in 2019. ECF No. 31 at 14 n.2; ECF No. 20. A front pay award in these circumstances would be based on some speculative notion that MSDS would stay in business and be financially stable enough to employ Mitchell. Under such circumstances, front pay appears unsupported and inequitable. The request is denied.

### C. Compensatory and Punitive Damages

The EEOC next argues that the Court should award compensatory damages up to the statutory cap of $50,000.00. ECF No. 31 at 20, 24. The ADA permits awarding compensatory damages. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981a); *see also Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 391 n.39 (D. Md. 2011) (collecting cases). The awards are capped all depending on the size of the corporation, which for MSDS is $50,000. *See* 42 U.S.C. § 1981a(b); ECF No. 31-2 ¶ 8.

Compensatory damages are designed to capture "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3); *see, e.g.*, *Cline v. Wal-Mart Stores*, 144 F.3d 294, 304 (4th Cir. 1998). Although testimony alone may support a compensatory damage award, such

testimony "must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 546 (4th Cir. 2003) (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996)). "Conclusory statements that the plaintiff suffered emotional distress" will not suffice. *Id.* at 547 (quoting *Price*, 93 F.3d at 1254); *see also Taylor v. Republic Servs., Inc.*, 968 F. Supp. 2d 768, 804 (E.D. Va. 2013).

When viewing the totality of the record evidence, compensatory damages of $50,000 is amply supported. MSDS repeatedly harassed Mitchell at her home before she returned to work in 2016, all with the intent of coercing her to return sooner. MSDS supervisors also chastised Mitchell for pursuing her discrimination claims. ECF No. 31-2 ¶ 17. When Mitchell ultimately returned to work, MSDS personnel engaged in a pattern of ignoring, delaying, and denying her requests to accommodate her disability. *See* ECF No. 33-1; ECF No. 31-2 ¶ 17. As a result, Mitchell's PTSD and Panic Disorder symptoms worsened, and she suffered needlessly. ECF No. 33-1; ECF No. 33-22 at 7. Her mental and emotional damages are well supported. ECF No. 31-2 at ¶ 24; *see* ECF No. 33-1. *See also Price*, 93 F.3d at 1254–55. Taking into account Mitchell's emotional distress, her attempts to seek treatment in mitigating her symptoms, and the continuing physical and emotional manifestations of her distress, the Court will award Mitchell $50,000, the statutory cap, as compensatory damages.[6]

### D.    Post-Judgment Interest

Lastly, the EEOC asks the Court to order that Mitchell be awarded post-judgment interest. ECF No. 31 at 25. Post judgment interest is applicable here and will be awarded pursuant to 28 U.S.C. § 1961.

---

[6] As the Court awards Mitchell the maximum $50,000 in compensatory damages, it declines to reach the EEOC's alternative request for punitive damages.

## IV. Conclusion

For the above-stated reasons, the Court finds that Mitchell is entitled to $219,232.11 in backpay, representing Mitchell's lost wages, overtime, PTO, and out-of-pocket medical expenses; $24,436.78 in prejudgment interest; $50,000 in compensatory damages; and post-judgment interest. A separate Order follows.

12/22/21
Date

/S/
Paula Xinis
United States District Judge